## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MARISOL M.,

                   Plaintiff,    1:20-cv-08993-NLH

v.                        **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

                   Defendant.

_____

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

     *On behalf of Plaintiff*


ANTONIA MARIA ADAM
EMILY BRESLIN MARKOS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

     *On behalf of Defendant*


**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration.

405(g), regarding Plaintiff's application for Disability
Insurance Benefits ("DIB")[2] under Title II of the Social Security
Act.  42 U.S.C. § 423, et seq.  It is also before the Court
under § 1614(a)(3)(A) of the Social Security Act, as amended 42
U.S.C. § 1382c(a)(3(A), regarding Plaintiff's application for
supplemental security income ("SSI")[3] under Title XVI of the
Social Security Act. 42 U.S.C. § 1381 et seq.  The issue before
the Court is whether the Administrative Law Judge ("ALJ") erred
in finding that there was "substantial evidence" that Plaintiff
was not disabled at any time since her alleged onset date of
disability, July 2, 2013.  For the reasons stated below, this
Court will reverse that decision and remand the matter for
further proceedings.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On August 25, 2016, Plaintiff, filed an application for
DIB, alleging that she became disabled on July 2, 2013.  (ECF 12

---

[2] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of
quarters of insured employment has suffered such a mental or
physical impairment that the claimant cannot perform substantial
gainful employment for at least twelve months.  42 U.S.C. § 423
et seq.

[3] SSI is a program under the Social Security Act that provides
supplemental security income to individuals who have attained
age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

at 1).  Plaintiff claims that she can no longer work as a cleaner because of her severe impairments, including spine disorder, asthma, diabetes mellitus, dysfunction of major joint (left shoulder), disorder of muscle/fascia (left ankle), hypertension, obesity, aortic valve disease, gastrointestinal disorder, migraine, and persistent depressive disorder.[4]  (Id. at 2).

Plaintiff's initial claim was denied on November 9, 2016 (R. 391), and upon reconsideration on June 27, 2017 (R. at 406). Plaintiff requested a hearing before an ALJ, which was held on March 19, 2019.  (Id .at 15).  On May 9, 2019, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on June 24, 2020 (Id. at 1-5), making the ALJ's May 9, 2019 decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial

---

[4] On the alleged onset date of July 2, 2013, Plaintiff was 38 years old, which is defined as "a younger individual" (age 18-49).  20 C.F.R. § 404.1563.

review of the Commissioner's decision to deny a complainant's application for social security benefits.[5]  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the

---

[5] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945). The Court will provide citations only to the DIB regulations. See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.     Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step

process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix
     1 and has lasted or is expected to last for a
     continuous period of at least twelve months, the
     claimant will be found "disabled."

4.   If the claimant can still perform work she has done in
     the past ("past relevant work") despite the severe
     impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience
     to determine whether or not she is capable of
     performing other work which exists in the national
     economy.  If she is incapable, she will be found
     "disabled."  If she is capable, she will be found "not
     disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of her claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving
that work is available for the Plaintiff: "Once a claimant has
proved that he is unable to perform his former job, the burden
shifts to the Commissioner to prove that there is some other
kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.
Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

    **C.  Analysis**

    At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  (R. at 18).  At step two, the ALJ found that
Plaintiff's impairments of spine disorder, asthma, diabetes
mellitus, dysfunction of major joint (left shoulder), disorder
of muscle/fascia (left ankle), hypertension, obesity, aortic
valve disease, gastrointestinal disorder, migraine, and
persistent depressive disorder were severe.  (Id.)  At step
three, the ALJ determined that Plaintiff's severe impairments or
her severe impairments in combination with her other impairments
did not equal the severity of one of the listed impairments.
(Id. at 19).  The ALJ then determined that Plaintiff's residual
functional capacity ("RFC") precluded her from performing her
past work as a cleaning, but her RFC rendered her capable of

performing work at the sedentary level,[7] with some exertional and environmental limitations (steps four and five).  (Id. at 20-21).

Plaintiff presents two arguments that the ALJ erred at step five.  Plaintiff contends that the ALJ erred in determining that she was capable of performing sedentary level jobs because of a faulty hypothetical question posed to the Vocational Expert ("VE").  (ECF 12 at 1).  Plaintiff argues that even though the ALJ found Plaintiff, who was educated in Spanish and lived a significant portion of her life in Puerto Rico, to be illiterate in English, the ALJ did not convey that finding to the VE, who then suggested jobs that require proficiency in speaking, writing, and understanding English that Plaintiff does not possess.  (Id. at 4-5).  Plaintiff also argues in the alternative that even if the Court finds that the VE assumed that Plaintiff was illiterate in English, the ALJ did not solicit a "reasonable explanation" from the VE to explain the discrepancy between the jobs proposed by the VE as described in the Dictionary of Occupational Titles (the "DOT") and

---

[7] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

Plaintiff's actual abilities as required by Social Security

Ruling ("SSR") 00-4p.[8]  (Id. at 1).

**1. The ALJ's hypothetical to the VE at step five**

At step five of the sequential step analysis, the burden is

on the Commissioner to show that an individual's impairments do

not prevent her from performing other work that exists in the

national economy, considering her RFC together with the

vocational factors of age, education, and work experience.  See

20 C.F.R. § 404.1520(f).  In making that determination, an ALJ

will rely on the DOT, as well as testimony from VEs, for

information about the requirements of work in the national

economy.  SSR 00-4p.

Occupational evidence provided by a VE generally should be

consistent with the occupational information supplied by the

DOT, but when there is an apparent unresolved conflict between

VE evidence and the DOT, the ALJ must elicit a reasonable

explanation for the conflict before relying on the VE evidence

to support a determination about whether the claimant is

disabled.  Id.  The ALJ must then explain in her decision how

_____

[8] See SSR 00-4p ("[B]efore relying on VE [] evidence to support a
disability determination or decision, our adjudicators must:
Identify and obtain a reasonable explanation for any conflicts
between occupational evidence provided by VEs [] and information
in the Dictionary of Occupational Titles (DOT)").

she resolved the conflict.  Id.

In this case, the ALJ determined that Plaintiff was not capable of performing her past work as a cleaner, which is a heavy exertion level job.  (R. at 30).  The ALJ found that "[t]he claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English."[9]  (Id.)  The ALJ noted that a transferability of skills analysis was not necessary because Plaintiff's prior work was unskilled.  (Id.)

The ALJ's assessment of Plaintiff's education – i.e., Plaintiff's illiteracy in English – and how the ALJ described Plaintiff's education to the VE is the crux of this aspect of Plaintiff's appeal.  At the hearing, the ALJ posed the following hypothetical to the VE:

> I'll have you assume an individual of the claimant's age and education, with the past work you've just classified.  Further, I'd like you to assume this

_____

[9] At the time that the ALJ rendered her decision, 20 C.F.R. § 404.1564(b) specifically referenced English language abilities as opposed to fluency in other languages as relevant to an assessment of a claimant's education.  The section, as revised as of April 27, 2020, defines illiteracy more generally as an inability to read and write without specific reference to foreign languages.  Courts since this change have construed the ability to communicate specifically in English as salient to an illiteracy determination.  See Rodriguez v. Kijakazi, No. 8:21-CV-681-T-SPF, 2022 WL 2156202, at *4 (M.D. Fla. June 15, 2022); Valdizon v. Kijakazi, No. 1:20-CV-01271-SKO, 2022 WL 378656, at *7 (E.D. Cal. Feb. 8, 2022).

individual is limited as follows. Assume they can lift and
carry no more than 20 pounds occasionally or 10 pounds
frequently, stand or walk six of eight hours and sit for
six of eight hours; only occasional ramps and stairs; no
ladders, ropes, or scaffolds; frequent balancing,
occasional stooping, kneeling, crouching, and crawling; no
exposure to extreme cold, heat, pulmonary irritants,
unprotected heights, or hazardous machinery; less than
occasional exposure to wetness, humidity, and vibration.
Assume the individual is able to understand, remember, and
carry out simple, routine, repetitive tasks involving
simple work-related decisions in a routine environment with
few if any workplace changes, and can work for two hours
before needing a break.  Could that hypothetical individual
perform any of the past work?

(R. at 304-305).

The VE answered "no," and stated that the hypothetical

individual described by the ALJ could perform the sedentary

level jobs of final assembler, optical goods (DOT #

713.687-018), lens inserter (DOT # 713.687-026), and compact

assembler (DOT # 739.687-026).  (R. at 31).  The DOT[10] classifies

---

[10] "The DOT is a vocational dictionary that lists and defines all
jobs available in the national economy and specifies what
qualifications are needed to perform each job."  Zirnsak v.
Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citing Appendix C,
Dictionary of Occupational Titles, available at
www.occupationalinfo.org/appendxc_1.html) (other citations
omitted).  The qualification categories listed by the DOT for
each job include the job's Strength level, General Educational
Development ("GED") level, and its Specific Vocational
Preparation ("SVP") level.  Strength level "reflects the
estimated overall strength requirement of the job."  GED
measures the "those aspects of education (formal and informal)
which are required of the worker for satisfactory job
performance."  GED is broken into three categories: (1)
reasoning development, (2) mathematical development, and (3)

the first two jobs with a language development level of 1, which

requires:

> Reading: Recognize meaning of 2,500 (two- or three-
> syllable) words. Read at rate of 95-120 words per minute.
> Compare similarities and differences between words and
> between series of numbers.
>
> Writing:  Print simple sentences containing subject, verb,
> and object, and series of numbers, names, and addresses.
>
> Speaking: Speak simple sentences, using normal word order,
> and present and past tenses.

The DOT classifies the last job of compact assembler with a

language development level of 2, which requires:

> Reading: Passive vocabulary of 5,000-6,000 words. Read at
> rate of 190-215 words per minute. Read adventure stories
> and comic books, looking up unfamiliar words in dictionary
> for meaning, spelling, and pronunciation. Read instructions
> for assembling model cars and airplanes.
>
> Writing: Write compound and complex sentences, using
> cursive style, proper end punctuation, and employing
> adjectives and adverbs.
>
> Speaking: Speak clearly and distinctly with appropriate
> pauses and emphasis, correct pronunciation, variations in
> word order, using present, perfect, and future tenses.

DOT, Appendix C.

Plaintiff argues that the ALJ did not present a proper

hypothetical to the VE regarding the vocational factor of

education so that the VE could either modify his testimony

---

language development.  Reasoning levels in the DOT range from
level 1 to level 6.

regarding the jobs Plaintiff was capable of performing, or explain the apparent conflict between the language level required by the suggested jobs and Plaintiff's educational level, which the ALJ deemed to be commensurate with illiteracy. Because the VE was left in the dark as to Plaintiff's apparent lack of English language skills, Plaintiff argues that the ALJ failed to fulfill her obligation under SSA regulations to elicit a reasonable explanation for the conflict from the VE, and then explain how she resolved the conflict in her decision.

The Court agrees.  The testimony at the hearing regarding Plaintiff's education indicated that she understood and spoke only some English and that she received her GED in Spanish.  (R. at 290-97).  The hearing transcript does not contain clear testimony regarding Plaintiff's proficiency in English beyond Plaintiff's statement that she could understand "some, but not a lot" of English, which was made through an interpreter at the hearing.  (Id. at 290).  Thus, when the ALJ asked the VE to consider a hypothetical individual with Plaintiff's "education," the only information as to Plaintiff's education available to the VE on which to base her testimony was that Plaintiff understood some English, completed her GED in Spanish, and used

an interpreter during the hearing.[11]

The ALJ's hypothetical presents one problem that compounds into a second problem.  First, the ALJ's hypothetical does not fully apprise the VE of Plaintiff's education, which is a vocational factor that the ALJ must consider in tandem with Plaintiff's RFC.  See 20 C.F.R. § 404.1520(f).  Second, in her decision the ALJ determined that Plaintiff was illiterate in English, and that Plaintiff was capable of performing the three jobs suggested by the VE.  The ALJ failed, however, to reconcile

_____

[11] The Court finds its prior decision in Saez-Ortiz v. Comm'r of Soc. Sec., No. 1:17-CV-06286-NLH, 2019 WL 324922, at *7 (D.N.J. Jan. 25, 2019) to be particularly salient here.  In Saez-Ortiz, this Court was faced with a very similar situation in which the plaintiff argued that the ALJ failed to provide the VE with a hypothetical that accounted for the plaintiffs lack of English proficiency and that that error was compounded because the ALJ did not solicit from the VE a reasonable explanation as to why she could perform certain jobs that the DOT listed as requiring a higher level of proficiency in English than the plaintiff possessed.  See generally id.  There, the Court found that the lack of reference to the plaintiff's language skills at the hearing beyond the fact that she used an interpreter militated against a finding that the VE took her language skills into account when proposing potential jobs.  Id. at *7.  The facts in the instant case are slightly less stark in that there is specific reference in the hearing to the fact that Plaintiff earned her GED in Spanish and that she did not understand a great deal of English.  However, as further explained in this Opinion, the Court finds that those two passing references to Plaintiff's language skills does not make the ALJ's boilerplate reference to Plaintiff's "education" in her hypothetical accurate.

Plaintiff's illiteracy with the language development levels of the jobs suggested by the VE, who based her testimony on the incomplete hypothetical.  This is in contravention of the regulations and Third Circuit law.  <u>See</u> SSR 00-4p; <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 617 (3d Cir. 2014) (internal quotations and citations omitted) ("As a general rule, occupational evidence provided by a VE should be consistent with the occupational evidence presented in the DOT," and to ensure consistency "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved.").

Defendant argues that the ALJ did not err in these two ways, but even if she did, those errors do not warrant remand, because: (1) the Medical-Vocational Guidelines, or "Grids,"[12] instruct that the inability to communicate in English has the least significance when a claimant is found to be able to work

---

[12] The Grids is a group of clear rules that dictate a finding of disabled or not disabled based on a claimant's vocational factors (age, education, and work experience) and individual RFC.  <u>See</u> Medical-Vocational Guidelines of Appendix 2 of 20 C.F.R. pt. 404, subpt. P, app. 2.

at the sedentary, unskilled level;[13] (ECF 13 at 6-7) (2) the VE considered Plaintiff's illiteracy because he saw the interpreter at the hearing and heard Plaintiff say that she could understand "some, but not a lot" of English; (id. at 9) (3) and if language levels in the DOT controlled it would lead to the absurd result that every individual who was illiterate in English would be considered disabled (id. at 10).

The Court is not persuaded. First, the Grids are not controlling in this case because Plaintiff has both exertional and nonexertional limitations, and an ALJ must take testimony from a VE or consider other similar evidence, such as a learned treatise, rather than solely rely upon the Grids at step five. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000). In circumstances where the ALJ may refer only to the Grids, there

---

[13] "While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." Medical-Vocational Guidelines of Appendix 2 of 20 C.F.R. pt. 404, subpt. P, app. 2, 201.00(i).

is no need for the ALJ to reconcile any conflicts between the VE testimony and the DOT because the VE testimony is not necessary. Where VE testimony is required, as is the case here, and a conflict arises, the rule requiring the ALJ to explain how the conflict impacts the step five analysis makes sense because demonstrating that a claimant is capable of other jobs in the national economy is the Commissioner's burden to prove, and an unexplained conflict could undermine the ALJ's ultimate benefits determination.  Sykes, 228 F.3d at 263 (describing the ALJ's burden at step five).

Defendant's other arguments are unavailing as well.  The presence of an interpreter at a hearing and the fact that the VE heard Plaintiff indicate that she understood a little bit of English does not automatically suggest the level of a claimant's English literacy and her overall education level.  Here, it is unknown to everyone what the VE considered to be Plaintiff's "education," other than the VE, whose thoughts on the issue were not elicited by the ALJ or otherwise volunteered by the VE. Relatedly, contrary to Defendant's argument that Plaintiff's counsel should have raised the issue at the hearing (ECF 13 at 4), it is not Plaintiff's burden to establish other work in the economy she is capable of performing.  Moreover, the

determination that Plaintiff was illiterate was made in the
ALJ's decision, which came well after the hearing.

Also unknown to everyone is how Plaintiff performed her
prior work such that, as Defendant argues (Id. at 12), it could
be extrapolated that her capability to perform a language level
1 job in the past rendered her equally capable of performing the
three jobs suggested by the VE.  Thus, the fact that Plaintiff
worked in a language level 1 job previously does not – without
more information as to how Plaintiff performed that job –
support Defendant's position, especially when the ALJ does not
articulate that same reasoning in her decision.  See, e.g.,
Williams v. Astrue, 317 F. App'x 212, 214 (3d Cir. 2009) (noting
that a claimant's past work was classified as medium level jobs,
but the claimant performed those prior jobs at the light level);
Karge v. Commissioner of Social Security, 2018 WL 6077981, at *2
(D.N.J. 2018)(noting that the claimant performed past work at
the sedentary level rather than at the light level as that past
work is classified by the DOT); De Diaz v. Berryhill, 2018 WL
6603865, at *3 (C.D. Cal. 2018)(rejecting the Commissioner's
argument that because the plaintiff worked over ten years as a
machine operator, which is a Language Level One job, he could
perform a job with similar duties to those identified by the VE,

finding that the plaintiff never testified about the specifics of her job as a machine operator, so the court was unable to determine if her duties as she performed them were consistent with the DOT definition, and noting that courts have routinely rejected similar arguments (citing Obeso v. Colvin, No. 15-151, 2015 WL 10692651, at *16 (E.D. Cal. Apr. 20, 2015)(noting that the Ninth Circuit has "resoundingly rejected" the argument that a claimant's prior work would excuse an ALJ from explaining how the claimant's language limitations would impact her ability to perform jobs identified by the VE)).

Finally, a finding that the ALJ erred by not fulfilling her obligations to inquire about and explain the conflict between the VE's testimony and the ALJ's determination that Plaintiff was illiterate in English does not result in a broader rule that effectively deems every non-English speaker or illiterate person to be disabled.  As succinctly stated by the Ninth Circuit, "A claimant is not per se disabled if he or she is illiterate.  We merely hold that in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).  This Court makes the same

21

observation here, which is in accord with the SSA regulations and the law within the Third Circuit.  See SSR 00-4p; Zirnsak, 777 F.3d at 617.

The Third Circuit has suggested that an ALJ's failure to address a conflict presented by a VE's testimony does not automatically warrant remand where "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result."  Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005).  For example, in Zirnsak, the Third Circuit noted that neither the ALJ nor the VE explained how a sit/stand option would transform a subassembler job from a job requiring "light" exertion level to a "sedentary" job, and found that the ALJ did not elicit a reasonable explanation for this inconsistency.  Zirnsak, 777 F.3d at 619-20.  The Third Circuit held that the ALJ's failure to comply with the requirements of SSR 00-4p in that instance was not fatal, however, because substantial evidence supported the claimant's ability to perform three other jobs widely available in the national economy.  Id. at 620.

In contrast to Zirnsak, the Court cannot determine here whether substantial evidence supports the ALJ's conclusion that Plaintiff is capable of performing work that exists in the

22

national economy because a significant vocational factor –
Plaintiff's illiteracy in English – was not addressed for any of
the jobs the ALJ determined Plaintiff was capable of performing.

The Court does not suggest that no jobs exist that
Plaintiff is able to perform simply because of her illiteracy in
English. In order to determine whether the ALJ has supported
her burden at step five, however, the ALJ must elicit from the
VE how a claimant's illiteracy in English would affect the jobs
available to her, when also considering her RFC, age and prior
work experience. The ALJ must then explain how the VE's
testimony impacts her ultimate conclusion at step five. In the
context of an ALJ's non-compliance with SSR 00-4p as it pertains
to a claimant's illiteracy, rather than for other exertional and
nonexertional limitations, many other courts have ordered remand
for the same reasons. See 2 Soc. Sec. Disab. Claims Prac. &
Proc. § 22:156 (2nd ed.)(citing Santiago v. Astrue, 181 Soc.
Sec. Rep. Serv. 233, 2012 WL 3194402 (E.D. Pa. 2012)(The ALJ
found the claimant was unable to communicate in English,
including reading, writing or speaking and, thus, was considered
illiterate for purposes of disability evaluation. The ALJ's
hypothetical to the VE did not include the claimant's language
problem; therefore, it could not be determined whether the VE's

response to the posed question reflected claimant's inability to
communicate in English.  Although the VE testified he took into
consideration the claimant's language problem, the VE concluded
without explanation that claimant could work as an usher or
ticket taker, according to the DOT, but the DOT provided that
those positions required English language skills, thereby
strongly suggesting that the VE's answer did not adequately take
into account claimant's significant language limitation.); Oeur
v. Astrue, 174 Soc. Sec. Rep. Serv. 196, 2012 WL 234642 (C.D.
Cal. 2012) (The ALJ found as part of claimant's RFC that he
could not read or write in English and required instructions
translated into the Cambodian language. However, the
descriptions in the DOT for the jobs the VE testified claimant
could perform all required him to read and write, and speak
English language level 1 and 2. The VE failed to acknowledge any
conflict with the DOT and provided no explanation for the
variance between the DOT and the jobs claimant could allegedly
do. The ALJ did not resolve this conflict and, in fact, asserted
without explanation that the VE's testimony was consistent with
the DOT. The ALJ's errors were not harmless as there was no
analysis of the jobs identified by the VE and the extent to
which the job base would be eroded by the claimant's lack of

language skills, lack of education and requirement for work
instructions to be given in Cambodian); <u>Centeno v. Astrue</u>, 175
Soc. Sec. Rep. Serv. 610, 2012 WL 728073 (W.D. Tex.
2012)(Claimant, who testified through a translator and testified
that she could not read, write or speak English, was found by
the ALJ to be able to communicate "some" in English, without
explaining what that meant. The ALJ asked the VE to consider
someone with the claimant's education, without defining
claimant's educational level or English language proficiency. In
response, also without articulating what educational or language
level he was considering, the VE testified that such a person
could perform the requirements of occupations described in the
DOT. However, the referenced jobs required the ability to write
and speak simple sentences, and read a specified amount of
English. Without any discussion the ALJ determined that the VE's
testimony was consistent with information in the DOT. The ALJ's
failure to include in the hypothetical that claimant was only
able to communicate "some" English or articulate what he meant
by "some" was not harmless error. The Commissioner failed to
carry the burden of establishing claimant's education, namely
her English language ability, was sufficient to perform the jobs
identified by the VE)).

## III. CONCLUSION

When an ALJ has failed to apply the correct legal standards and her conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 99 (1991).

Because the issue of how Plaintiff's illiteracy in English impacts Plaintiff's ability to perform jobs in the national economy is for the ALJ to determine based on testimony from a VE – a determination on which this Court expresses no opinion - the proper course in this action is to remand the matter for further consideration.  Consequently, the ALJ's otherwise thoughtful and comprehensive determination that Plaintiff is not disabled as of July 2, 2013 will be reversed and remanded for further consideration consistent with this Opinion.

An accompanying Order will be issued.


Date:  June 29, 2022                        s/  Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.